FILED

11/17/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AUSA Patrick Mott (312) 554-9133

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ANTHONY JOSEPH CARLSON,
also known as "A.J.," "Ajay"

Case No.: 1:21-cr-00704
M. DAVID WEISMAN
Magistrate Judge

## AFFIDAVIT IN REMOVAL PROCEEDING

I, DANIEL LATHAM, appearing telephonically before United States Magistrate

Judge M. DAVID WEISMAN and being duly sworn on oath, state that as a federal law

enforcement officer I have been informed that ANTHONY JOSEPH CARLSON, also

known as "A.J." and "Ajay," has been charged by Indictment in the Central District of

California with the following criminal offenses: conspiracy to commit wire fraud, in

violation of Title 18, United States Code, Section 1349 (Counts One and Four);

unauthorized access to a protected computer and obtaining information from that

computer in furtherance of their conspiracy to commit wire fraud, in violation of Title

18, United States Code, Sections 1030(a)(2)(c), 1030(c)(2)(B)(i), 1030(c)(2)(B)(ii), and

2(a) (Counts Two and Five); and aggravated identity theft, in violation of Title 18,

United States Code, Section 1028A(a)(1), and 2(a) (Counts Three and Six).

A copy of the Indictment is attached. A copy of the arrest warrant also is

attached.

DANIEL LATHAM
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to by telephone this 17th day of November, 2021.

M. DAVID WEISMAN
United States Magistrate Judge

FILED
CLERK, U.S. DISTRICT COURT

11/09/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____DM_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>ANTHONY JOSEPH CARLSON,<br>  aka "A.J.,"<br>  aka "Ajay," and<br>CALVIN ANDREW WESTBERG,<br><br>      Defendants. | CR 2:21-cr-00521-PA<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1030(a)(2)(c), (c)(2)(B)(i), (c)(2)(B)(ii): Unauthorized Access to a Protected Computer to Obtain Information; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 2(a): Aiding and Abetting; 18 U.S.C. §§ 981(a)(1)(C), 982, 1030, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS AND DEFINITIONS

At times relevant to this Indictment:

A.  Defendants

1.  Defendant ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay" ("CARLSON"), was a resident of the Central District of California.

2.  Defendant CALVIN ANDREW WESTBERG ("WESTBERG") was a resident of the District of Minnesota.

B.    Accounts

3.    Facebook, Inc. ("Facebook"), located in Menlo Park, California, operated computers used by subscribers of both the Facebook and Instagram services all over the world in interstate and foreign commerce and communications.

4.    Google LLC ("Google"), located in Mountain View, California, operated computers used by subscribers all over the world in interstate and foreign commerce and communications.

5.    Microsoft Corporation ("Microsoft"), located in Redmond, Washington, operated computers used by subscribers of the Microsoft, Hotmail and Skype services all over the world in interstate and foreign commerce and communications.

6.    AT&T Corporation ("AT&T") was a telecommunications company headquartered in Dallas, Texas that operated AT&T Wireless.

7.    PayPal, Inc. ("PayPal") operated a worldwide online payment system that supported online money transfers, headquartered in San Jose, California.

8.    Coinbase was a company specializing in the exchange of digital currency, headquartered in San Francisco, California.

9.    Binance was a Taiwan-based cryptocurrency exchange.

C.    Definitions

10.    A Subscriber Identity Module ("SIM") card was a chip located inside a cell phone that stored information identifying and authenticating a cell phone subscriber.  When a cell phone carrier reassigned a phone number from one physical phone to another -- such as when a customer purchased a new phone but wanted to retain the same number -- the carrier switched the assignment of the cell phone

number from the SIM card in the old phone to the SIM card in the new phone, a process sometimes called "porting" a number.

11. "SIM swapping" referred to the process of inducing a carrier to reassign a cell phone number from the legitimate subscriber or user's SIM card to a SIM card controlled by another without the legitimate subscriber or user's authorization.

12. "Cryptocurrency" was an umbrella term for digital currency in which encryption and blockchain technologies were used to regulate the generation of units of currency and verify the transfer of funds, generally with relative anonymity. Bitcoin, Ethereum, and Litecoin were all cryptocurrencies. Some cryptocurrency users maintained online "wallets" with cryptocurrency exchanges such as Coinbase and Binance.

<u>COUNT ONE</u>

[18 U.S.C. § 1349]

13.    The Grand Jury re-alleges and incorporates here paragraphs 1 through 12 of the Introductory Allegations and Definitions of this Indictment.

A.    <u>OBJECT OF THE CONSPIRACY</u>

14.    Beginning on an unknown date, but no later than on or about December 9, 2017, and continuing through at least December 11, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay" ("CARLSON"), and an unindicted coconspirator ("UICC"), together with others known and unknown to the Grand Jury, knowingly conspired to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

B.    <u>MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED</u>

15.    The object of the conspiracy was to be accomplished, in substance, as follows:

(a)    Defendant CARLSON and the UICC would identify potential victims who they believed possessed cryptocurrency.

(b)    Defendant CARLSON and the UICC would obtain personal identifying information for the victim and the victim's cell phone number.

(c)    With defendant CARLSON listening through his computer, the UICC would call employees at cell phone carrier stores while posing as an employee of the carrier at another local store.  The UICC would claim that the computer at his purported store was inoperative and that he was with a customer who needed to have their

4

1  number ported to a new device, and would request that the employees

2  port the number for him.

3        (d)  The UICC would cause the victim's cell phone number to

4  be SIM swapped by using false information and representations to

5  convince the carrier's employee to port the number from the victim's

6  cell phone to a cell phone controlled by defendant CARLSON, the UICC

7  or other coconspirators.

8        (e)  Defendant CARLSON and the UICC would cause password-

9  reset information and codes for the victim's email account to be sent

10  via text message to the phone controlled by defendant CARLSON, the

11  UICC, or other coconspirators.

12        (f)  Defendant CARLSON and the UICC would then access the

13  victim's email account, obtain information, and identify the victim's

14  financial accounts containing cryptocurrency.

15        (g)  Defendant CARLSON and the UICC or other coconspirators

16  would access the victim's financial accounts and change the

17  passwords.

18        (h)  Defendant CARLSON and the UICC or other

19  coconspirators, while accessing the victim's financial accounts

20  without authorization and posing as the victim, would request a

21  purchase of cryptocurrency.

22  C.    <u>OVERT ACTS</u>

23      16.  In furtherance of the conspiracy, and to accomplish its

24  object, defendant CARLSON and the UICC, together with others known

25  and unknown to the Grand Jury, on or about the dates set forth below,

26  committed and caused to be committed various overt acts, in the

27  Central District of California and elsewhere, including, but not

28  limited to, the following:

Overt Act No. 1:    On or before December 9, 2017, defendant CARLSON and the UICC, or other coconspirators, obtained the cell phone number for Victim 1 and another potential victim, as well as the last four digits of Victim 1's social security number.

Overt Act No. 2:    On December 9 and 10, 2017, with defendant CARLSON listening through his computer, the UICC called employees at various AT&T cellular service stores while himself posing as an AT&T employee, claiming that the computer at the UICC's store was down and that the UICC was with a customer who needed to have their number ported to a new device, and requested that the employees port the number for him.

Overt Act No. 3:    On December 9, 2017, during one of the calls to an AT&T store by the UICC, the UICC provided an AT&T employee with a potential victim's phone number and address in an unsuccessful attempt to convince the AT&T employee to port the phone number for the potential victim.

Overt Act No. 4:    On December 10, 2017, while the UICC was calling various AT&T stores to induce SIM swapping, defendant CARLSON and another unindicted coconspirator communicated via Skype about "the AT&T Method."

Overt Act No. 5:    On December 10, 2017, during one of the calls to an AT&T store by the UICC, the UICC provided an AT&T employee with Victim 1's cell phone number and the last four digits of Victim 1's social security number.

Overt Act No. 6:    On December 10, 2017, as a result of the UICC's false and fraudulent representations to the AT&T employee, defendant CARLSON and the UICC caused Victim 1's cell number to be

SIM swapped by convincing that AT&T employee to port the number from Victim 1's cell phone to a device controlled by defendant CARLSON.

Overt Act No. 7:    On December 10, 2017, defendant CARLSON, the UICC, or other coconspirators, requested a password reset of Victim 1's Hotmail account, causing Microsoft to text a password reset code to a cell phone device controlled by defendant CARLSON or other coconspirators.

Overt Act No. 8:    On December 10, 2017, after receiving the Microsoft password reset code, defendant CARLSON forwarded the code to the UICC during an online chat between defendant CARLSON and the UICC, so that the UICC or other coconspirators could reset the password of Victim 1's Hotmail account and access the account without authorization for the purposes of stealing Bitcoin from Victim 1.

Overt Act No. 9:    On December 10, 2017, while Victim 1's Hotmail account was being accessed without authorization, in order to identify Victim 1's cryptocurrency accounts and to steal cryptocurrency from Victim 1, the UICC stated to defendant CARLSON aloud via Google Hangouts, "What are we looking for?  Bitcoin."

Overt Act No. 10:    On December 10, 2017, defendant CARLSON and the UICC, or other coconspirators, without authorization, then accessed Victim 1's Hotmail account to identify Victim 1's cryptocurrency and related financial accounts in order to steal Bitcoin from Victim 1.

Overt Act No. 11:    On December 10, 2017, defendant CARLSON and the UICC, or other coconspirators, without authorization, reset Victim 1's Coinbase account password using two-factor authentication.

Overt Act No. 12:    On December 10, 2017, while accessing Victim 1's Coinbase account without authorization, defendant CARLSON and the

UICC, or other coconspirators, initiated a request for the purchase of .6333 Bitcoin (then valued at approximately $10,000).

Overt Act No. 13:   On December 11, 2017, pursuant to the coconspirators' fraudulent December 10, 2017 purchase request to Coinbase, defendant CARLSON, the UICC, or other coconspirators caused a transfer of approximately $10,000 to be initiated from Victim 1's Bank of America account ending in 5471, which was linked to Victim 1's Coinbase account, over which defendant CARLSON and the coconspirators then had control.

COUNT TWO

[18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(i), (c)(2)(B)(ii); 2(a)]

17.  On or about December 10, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay," and an unindicted coconspirator, each aiding and abetting the other, intentionally accessed a computer without authorization and thereby obtained information from a protected computer, as that term is defined in Title 18, United States Code, Section 1030(e)(2)(B), that is, from the email server(s) of Microsoft Corporation, for the purpose of private financial gain and in furtherance of a criminal act, to wit, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349.

<u>COUNT THREE</u>

[18 U.S.C. §§ 1028A(a)(1); 2(a)]

18. Beginning on an unknown date, but no later than on or about December 9, 2017, and continuing through at least December 11, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay" ("CARLSON"), and an unindicted coconspirator, each aiding and abetting the other, knowingly transferred, possessed, and used, without lawful authority, means of identification that defendant CARLSON knew belonged to another person, during and in relation to the offense of conspiracy to commit wire fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

COUNT FOUR

[18 U.S.C. § 1349]

19.   The Grand Jury re-alleges and incorporates here paragraphs 1 through 12 of the Introductory Allegations and Definitions of this Indictment.

D.   OBJECT OF THE CONSPIRACY

20.   Beginning on an unknown date, but no later than on or about December 14, 2017, and continuing through at least January 2, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay" ("CARLSON"), and CALVIN ANDREW WESTBERG ("WESTBERG"), together with others known and unknown to the Grand Jury, knowingly conspired to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

E.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

21.   The object of the conspiracy was to be accomplished, in substance, as follows:

(a)   Defendants CARLSON and WESTBERG would identify potential victims who they believed possessed cryptocurrency.

(b)   Defendants CARLSON and WESTBERG would conduct online research regarding their potential victims.

(c)   Defendant CARLSON and/or unknown coconspirators, using false information and pretenses, would engage in SIM swapping in order to take control of a victim's cell phone number.

(d)   Defendants CARLSON, WESTBERG, and/or unknown coconspirators would obtain unauthorized access to the SIM swapping victim's Facebook account.

11

(e)   Once they had access, defendants CARLSON, WESTBERG, and/or unknown coconspirators would pose as the SIM swapping victim and communicate with the victim's friends on Facebook and request cryptocurrency, typically claiming that the cryptocurrency was needed quickly for a business venture and offering to pay a premium because there was not enough time to obtain the cryptocurrency from a traditional exchange.

(f)   While communicating with the SIM swapping victim's friends, defendants CARLSON and/or WESTBERG would specify cryptocurrency wallets for the receipt of cryptocurrency.

(g)   By posing as the SIM swapping victim, defendants CARLSON and/or WESTBERG would cause the SIM swapping victim's friends to transfer funds into the cryptocurrency wallets that had been specified.

(h)   Defendant CARLSON would receive the fraudulently obtained cryptocurrency either directly or indirectly into one of his cryptocurrency wallets.

(i)   Defendant CARLSON would transfer a portion of the cryptocurrency to defendant WESTBERG's cryptocurrency wallets.

F.   OVERT ACTS

22.   In furtherance of the conspiracy, and to accomplish its object, defendants CARLSON and WESTBERG, together with others known and unknown to the Grand Jury, on or about the dates set forth below, committed and caused to be committed various overt acts, in the Central District of California and elsewhere, including, but not limited to, the following:

1  <u>Overt Act No. 1:</u>  On December 23, 2017, defendant WESTBERG

2  conducted online searches for Victim 2 and visited Victim 2's Twitter

3  page.

4  <u>Overt Act No. 2:</u>  On December 23, 2017, while Victim 2 was

5  overseas, defendant CARLSON and/or other unknown coconspirators SIM

6  swapped Victim 2's cell phone number to a phone controlled by

7  defendant CARLSON or another coconspirator.

8  <u>Overt Act No. 3:</u>  On December 23, 2017, defendant CARLSON or

9  other coconspirators caused password reset information and codes for

10  Victim 2's Facebook account to be sent to defendant CARLSON or

11  another coconspirator.

12  <u>Overt Act No. 4:</u>  Between December 23, 2017 and December 24,

13  2017, defendant WESTBERG accessed, without authorization, Victim 2's

14  Facebook account.

15  <u>Overt Act No. 5:</u>  On December 23, 2017, defendants CARLSON

16  and/or WESTBERG, posing as Victim 2, and communicating through Victim

17  2's hacked Facebook account, contacted M.S. about an investment

18  opportunity, asking, "Hey, do you have any bitcoin?  I have a big

19  investor with me looking to get into crypto!," and offering to pay

20  for the cryptocurrency "plus 10 percent" because the "big investor"

21  could not wait for the transfer to be done through Coinbase.

22  <u>Overt Act No. 6:</u>  On or about December 23, 2017, because M.S.

23  advised he was unable to provide the requested cryptocurrency,

24  defendants CARLSON and/or WESTBERG or other coconspirators contacted

25  Victim 3, a friend of M.S., to request cryptocurrency for the

26  purported business transaction.

27  <u>Overt Act No. 7:</u>  On December 23, 2017, in an effort to prove

28  to Victim 3 that the business opportunity was legitimate and induce

13

Victim 3 to provide cryptocurrency, defendant CARLSON sent a test payment of $1.00 from defendant CARLSON's PayPal account ending in 6281 to Victim 3's PayPal account.

Overt Act No. 8:    On December 23, 2017, after sending the $1.00 test payment, defendants CARLSON and WESTBERG caused Victim 3 to send approximately one Bitcoin, then the equivalent of approximately $14,000, to a wallet ending in JVSq.

Overt Act No. 9:    On December 23, 2017, posing as Victim 2 and communicating through Victim 2's hacked Facebook account, defendants CARLSON and/or WESTBERG contacted Victim 4 with a purported business opportunity, and requested cryptocurrency from Victim 4 in exchange for various premiums to be paid back to Victim 4, purportedly in order to avoid waiting for the funds to clear from a traditional cryptocurrency exchange, stating, "Takes 8 days for the exchanges to get it into your wallet. Yes, I have an investor with me that's willing to pay well. I cant [sic] wait for coinbase."

Overt Act No. 10:    On December 23, 2017, defendants CARLSON and WESTBERG caused Victim 4 to send approximately .30226 Bitcoin, then the equivalent of approximately $4,544.58, to a wallet ending in HDHjy.

Overt Act No. 11:    On December 23, 2017, defendants CARLSON and WESTBERG caused Victim 4 to send approximately 13.85255 Litecoin, then the equivalent of approximately $4,003.52, to defendant CARLSON's Coinbase wallet ending in bR8a8.

Overt Act No. 12:    On December 23, 2017, defendants CARLSON and WESTBERG caused Victim 4 to send approximately 3.00063 Ethereum, then the equivalent of approximately $2,124.59, to defendant CARLSON's Coinbase wallet ending in 60Ba5.

Overt Act No. 13:   On December 23, 2017, defendant CARLSON sent a payment of approximately 1.44989 Ethereum, then the equivalent of approximately $1,000.43, from defendant CARLSON's Coinbase wallet ending in 60Ba5 to defendant WESTBERG's Coinbase wallet ending in 62F5c.

Overt Act No. 14:   On December 23, 2017, defendant CARLSON sent a payment of approximately 6.0025506 Litecoin, then the equivalent of approximately $1,670.44, from defendant CARLSON's Coinbase wallet ending in bR8a8 to defendant WESTBERG's Coinbase wallet ending in zLaoV.

Overt Act No. 15:   On December 23, 2017, defendant WESTBERG sent a payment of approximately 1.0818825 Ethereum, then the equivalent of approximately $750.44, from defendant WESTBERG's Coinbase wallet ending in 62F5c to defendant CARLSON's Coinbase wallet ending in 77f88.

Overt Act No. 16:   On December 23, 2017, defendants CARLSON and WESTBERG caused Victim 4 to send approximately 6.0025512 Litecoin, then the equivalent of approximately $1,679.69, to defendant CARLSON's Coinbase wallet ending in WwPis.

Overt Act No. 17:   On December 23, 2017, defendants CARLSON and WESTBERG caused Victim 4 to send approximately 1.70063 Ethereum, then the equivalent of approximately $1,174.96, to defendant CARLSON's Coinbase wallet ending in 6d097.

Overt Act No. 18:   On December 23, 2017, defendants CARLSON and WESTBERG caused Victim 4 to send approximately .0287879 Bitcoin, then the equivalent of approximately $412.27, to a wallet ending in 2hUxf.

Overt Act No. 19:  On December 23, 2017, defendants CARLSON and WESTBERG caused Victim 3 to send approximately 1 Bitcoin, then the equivalent of approximately $14,715.00, to a wallet ending in yJVSq.

Overt Act No. 20:  On December 23, 2017, defendant CARLSON received into his Coinbase wallet ending in WwPis a payment of approximately .001 Ethereum, then the equivalent of approximately $.66, from Victim 4.

Overt Act No. 21:  On January 2, 2018, defendant CARLSON received into his Binance wallet ending in bgRBo Victim 3's and Victim 4's Bitcoin from the wallets ending in yJVSq, HDHjy and 2hUxf.

## COUNT FIVE

[18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(i), (c)(2)(B)(ii); 2(a)]

23.   On or about December 23, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay," and CALVIN ANDREW WESTBERG, each aiding and abetting the other, intentionally accessed a computer without authorization and thereby obtained information from a protected computer, as that term is defined in Title 18, United States Code, Section 1030(e)(2)(B), that is, from the servers of Facebook, Inc., for the purpose of private financial gain and in furtherance of a criminal act, to wit, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349.

COUNT SIX

[18 U.S.C. §§ 1028A(a)(1); 2(a)]

24.  Beginning on an unknown date, but no later than on or about December 14, 2017, and continuing through at least January 2, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay" ("CARLSON"), and CALVIN ANDREW WESTBERG ("WESTBERG"), each aiding and abetting the other, knowingly transferred, possessed, and used, without lawful authority, means of identification that defendants CARLSON and WESTBERG each knew belonged to another person, during and in relation to the offense of conspiracy to commit wire fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count Four of this Indictment.

1

## FORFEITURE ALLEGATION ONE

2

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3    1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Section 981(a)(1)(C) and Title 28, United States

7  Code, Section 2461(c), in the event of any defendant's conviction of

8  the offenses set forth in any of Counts One, Three, Four and Six of

9  this Indictment.

10   2.   Any defendant so convicted shall forfeit to the United

11 States of America the following:

12        (a)  All right, title, and interest in any and all

13 property, real or personal, constituting, or derived from, any

14 proceeds traceable to the offenses; and

15        (b)  To the extent such property is not available for

16 forfeiture, a sum of money equal to the total value of the property

17 described in subparagraph (a).

18   3.   Pursuant to Title 21, United States Code, Section 853(p),

19 as incorporated by Title 28, United States Code, Section 2461(c), any

20 defendant so convicted shall forfeit substitute property, up to the

21 value of the property described in the preceding paragraph if, as the

22 result of any act or omission of said defendant, the property

23 described in the preceding paragraph or any portion thereof (a)

24 cannot be located upon the exercise of due diligence; (b) has been

25 transferred, sold to, or deposited with a third party; (c) has been

26 placed beyond the jurisdiction of the court; (d) has been

27 substantially diminished in value; or (e) has been commingled with

28 other property that cannot be divided without difficulty.

## FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 1030]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982(a)(2) and 1030, in the event of any defendant's conviction of the offenses set forth in either of Counts Two or Five of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

(b)    Any property used or intended to be used to commit the offense; and

(c)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1030(i), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the

court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
_____
Foreperson

TRACY L. WILKISON
Acting United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, Cyber & Intellectual
   Property Crimes Section

LISA E. FELDMAN
Assistant United States Attorney
Cyber & Intellectual Property
   Crimes Section

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>ANTHONY JOSEPH CARLSON,<br>akas A.J., Ajay<br><br>DEFENDANT(S) | CASE NUMBER: 2:21-cr-00521-PA     1<br><br>**WARRANT FOR ARREST** |

To:    UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest ANTHONY JOSEPH CARLSON, akas A.J., Ajay, and bring him forthwith to the nearest Magistrate Judge to answer an Indictment charging him with:

- 18 U.S.C. § 1349  (Conspiracy to Commit Wire Fraud)
- 18 U.S.C. § 1030(a)(2)(c)  (Unauthorized Access to a Protected Computer)
- 18 U.S.C. § 1028A(a)(1)  (Aggravated Identity Theft)
- 18 U.S.C. § 2(a)  (Aiding and Abetting)

| | | |
|---|---|---|
| Kiry K. Gray<br>NAME OF ISSUING OFFICER<br><br>Clerk of Court<br>TITLE OF ISSUING OFFICER<br><br>Dion D. Mitchell<br>SIGNATURE OF DEPUTY CLERK | | November 9, 2021    Los Angeles, CA<br>DATE AND LOCATION OF ISSUANCE<br><br>By:  ALICIA G. ROSENBERG<br>NAME OF JUDICIAL OFFICER |

## RETURN

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION)

| | |
|---|---|
| DATE RECEIVED | NAME OF ARRESTING OFFICER |
| DATE OF ARREST | TITLE |
| **DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO** | SIGNATURE OF ARRESTING OFFICER |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>ANTHONY JOSEPH CARLSON,<br>akas A.J., Ajay<br><br>DEFENDANT(S) | CASE NUMBER: 2:21-cr-00521-PA<br><br>1<br><br>**WARRANT FOR ARREST** |
| --- | --- |

## ADDITIONAL DEFENDANT INFORMATION

| RACE: | SEX: | HEIGHT: | WEIGHT: | HAIR: | EYES: | OTHER: | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| YEAR OF BIRTH:<br>**1997** | | PLACE OF BIRTH: | | SOCIAL SECURITY NO.: | | DRIVER'S LICENSE NO. | ISSUING STATE |
| ALIASES: | | SCARS, TATTOOS OR OTHER DISTINGUISHING MARKS: | | | | | |
| AUTO YEAR: | AUTO MAKE: | AUTO MODEL: | | AUTO COLOR: | | AUTO LICENSE NO.: | ISSUING STATE |
| LAST KNOWN RESIDENCE: | | | | LAST KNOWN EMPLOYMENT: | | | |
| FBI NUMBER: | | | | | | | |
| ADDITIONAL INFORMATION: | | | | | | | |
| INVESTIGATIVE AGENCY NAME:<br>**FBI** | | | | INVESTIGATIVE AGENCY ADDRESS: | | | |

NOTES: